NYGAARD, Circuit Judge,
Concurring in Part and Dissenting in Part.
This appeal is really all about money. Had Buchanan Ingersoll gotten paid the fees it wanted, it would have no desire to withdraw from the case. Indeed, its Petition for Reconsideration argued in the alternative — either grant our fee petition, or let us out. Lamentably, however, for all-too-many the practice of law has become much less a profession carried on for service to others, and much more a craft carried on unabashedly for remuneration. Courts, however, are not in the business of protecting or collecting fees on behalf of attorneys. Courts have a wider perspective and broader concerns. Attorneys are to be officers of the court, representing parties of course, but not free to simply abandon their obligation to either or both, because they have not been paid as much as they think they deserve. Indeed, our decision in Ohntrup v. Firearms Center, Inc. makes clear that attorneys, as officers of the court, cannot simply fade away unless and until they can demonstrate to the satisfaction of the court that they no longer serve some “meaningful purpose.” 802 F.2d 676, 679 (3rd Cir.1986). Although it is certainly desirable that attorneys be fully compensated, it does not follow that they always will be. Hence, I will join the majority’s determination, as set forth in footnote 2 of its opinion, that the District Court did not err in its fee award order. In my view, there is ample record evidence to support the District Court’s conclusions that Buchanan Ingersoll was seeking compensation for items not related to securing the proceeds of the Canadian bankruptcy (for which the court had approved compensation).[4]
However, I do not agree with the majority’s holding that the District Court abused its discretion by refusing to let Buchanan Ingersoll withdraw as counsel for G&G Investments. In my view, decisions such as this exemplify the wide discretion we give district judges to allow them sufficient latitude to keep their cases moving, prevent delays and prejudice to the parties, and to efficiently manage their dockets.[5] I would not interfere here either, but would instead defer to the district court judge who is intimately familiar with the goings-on in this case.
To me, the law is crystal clear: in federal courts, a corporation must be represented by counsel. See 28 U.S.C. § 1654. This requirement cannot be waived. See also Fed. Cir. R. 47.3(a). See also Row *166 land v. California Men’s Colony, 506 U.S. 194, 202, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) (“a corporation may appear in the federal courts only through licensed counsel”); United States v. Cocivera, 104 F.3d 566 (3d Cir.1996); WRS, Inc. v. Plaza Entm’t, Inc., 402 F.3d 424, 426 (3d Cir. 2005).
The majority concludes that by applying our decision in Ohntrup, supra, “in this manner, it appears that the District Court abused its discretion by refusing to allow Buchanan Ingersoll to withdraw.” (Maj. Op. at 164). I find this conclusion problematic for two reasons.
First of all, as we explained in Ohntrup, supra, the grant or denial of an attorney’s motion to withdraw in a civil case is a matter left to the discretion of the trial court. We must pay more than lip service to this standard of review. Under this standard, “[w]e will not disturb the District Court’s exercise of discretion absent a ‘definite and firm conviction that the court below committed a clear error of judgment.’ ” Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 127 (3d Cir.1993) quoting Ferrero, U.S.A., Inc. v. Ozak Trading, Inc., 952 F.2d 44, 48 (3d Cir. 1991). “Abuse” is a serious term, and implies a significant misjudgment. It matters not that we would decide differently. See Washington v. Sherwin Real Estate, Inc., 694 F.2d 1081 (7th Cir.1982) (citing Moore v. Sunbeam Corp., 459 F.2d 811, 829 (7th Cir.1972)). Under the abuse of discretion standard of review, the relevant inquiry is not “how the reviewing judges would have ruled if they had been considering the case in the first place.” Beshear v. Weinzapfel, 474 F.2d 127, 134 (7th Cir. 1973). It is simply not enough that it “appears that the District Court abused its discretion.” More is required than mere appearances. Rather, “an abuse of discretion is established only where no reasonable [person] could agree with the district court; if reasonable [persons] could differ as to the propriety of the court’s action, no abuse of discretion has been shown.” Smith v. Widman Trucking & Excavating, 627 F.2d 792, 795-96 (7th Cir.1980). There is no misjudgment here at all, significant or otherwise, and I would hold that the District Court did not abuse its discretion by requiring Buchanan Ingersoll to remain as counsel for G&G until Buchanan Ingersoll shows to the satisfaction of the court that it no longer serves a meaningful purpose in the case.
Second, I disagree with the manner in which the majority applies our decision in Ohntrup, particularly the majority’s implication that the District Court was obliged to perform some calculus to discover what meaningful purpose Buchanan continues to serve. That application contravenes our holding in Ohntrup, which clearly places the burden of persuasion on the law firm. See Ohntrup, 802 F.2d at 679-80, (“a law firm is entitled to withdraw once the firm demonstrates to the satisfaction of the district court that its appearance serves no meaningful purpose, particularly insofar as an opposing interest is concerned.”) (my emphasis). In my view it is not the District Court’s job to rummage around in the case to see if Buchanan Ingersoll continues to serve a meaningful service, or to perform some withdrawal “calculus” when Buchanan Ingersoll had neither put forth an argument about, nor provided any evidence of any “meaningful purpose” it may be serving. Instead, appellant seems wholly unaware of the Ohntrup test and its prerequisite burden of persuasion on this issue. “Meaningful purpose” has broad implications, including the District Court’s substantial interest in the administration of justice, in the efficient management of its schedule and docket, and the need to insure progress, not just in this case, but in all cases assigned to it.
*167 Finally, the Pennsylvania Rules of Professional Conduct cited by the Majority do not somehow supply Buchanan Ingersoll with permission to withdraw whenever it suits them. The majority’s assertion that Rules 1.16(b)(5) and 1.1.6(b)(6) permit withdrawal is simply wrong. Maj. Op. at 164. First, the Rules govern the behavior of lawyers — not the courts, federal or state. Second, the Rules do not permit withdrawal — they are actually limitations and circumscribe the conditions under which a lawyer may petition the court to withdraw. Third, and most significant, all conditions contained in Rule 1.16(b), governing when an attorney may attempt to withdraw, are made expressly subject to an exception found in Rule 1.16(c), which provides as follows:
c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation, (my emphasis).
Thus, the Majority’s premise that “Buchanan Ingersoll has clearly followed the ordinary rules of withdrawal” is just plain wrong and leads the opinion to a wrong conclusion. Indeed Rule 1.16 provides compelling authority for why we should affirm the District Court. Buchanan Ingersoll has been ordered to continue representing G&G. The District Court has properly exercised its discretion in so ordering. Instead it is Buchanan Ingersoll who is failing to follow the Pennsylvania Rules of Professional Conduct. Western District’s Local Rule 83.2.2.(D) clearly states that a withdrawal of appearance shall only be permitted with leave of court. Once an attorney enters an appearance in a case, he or she can only be relieved of that responsibility with the court’s permission — attorneys cannot simply back out when they are not getting paid as much as they want.
I think it is also worth noting that were we to affirm the District Court on this issue, we would still remand the cause.[6] The case is not over and when Buchanan Ingersoll returns to the District Court it can still re-petition the court to withdraw, present evidence to the District Court on the Ohntrup test, and attempt to carry its burden of persuading the District Court that it no longer serves “a meaningful purpose.” Until then it must obey the Order of the Court and the Rules of Professional Conduct and continue to represent G&G.
I respectfully dissent and would affirm the District Court’s orders in full.

. The record indicates that G&G has already paid Buchanan Ingersoll $279,515.05, belying its dramatic Thirteenth Amendment assertion that the District Court's orders would impose "involuntary servitude” upon them. (Appt's Brief at p. 14).

. Indeed, Buchanan Ingersoll admits that its withdrawal may result in some prejudice to appellee, but argues that it would be "nominal.” (Appellant's. Brief at p. 25).

. Appellate jurisdiction is based upon the collateral order exception to finality.