983 F.2d 1057
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ST. PAUL SURPLUS LINES INSURANCE COMPANY, Plaintiff-Appellee,
v.
Joel D. DAVIS, Defendant-Appellant,
and
Stanley Lewis; Joel Davis and Stanley Lewis, a Partnership,
t/a Torahtowne, Incorporated, Defendants.
 No. 91-2213.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: December 14, 1992
Decided: January 8, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore.
 Joel D. Davis, Appellant Pro Se.
 Peter Edward Keith, GALLAGHER, EVELIUS & JONES; Bruce E. Segal, COZEN & O'CONNOR, for Appellee.
 D.Md.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Joel Davis appeals from a default judgment awarding $272,043.25 in damages and prejudgment interest to St. Paul Surplus Lines (St. Paul), and the denial of his Motion for Reconsideration. Finding that the district court has personal jurisdiction in civil suits against individuals extradited from Israel to face charges under criminal indictment, we affirm.
 
 
 2
 Davis is a federal prisoner who has been convicted of arson, wire fraud, and mail fraud in connection with the 1980 burning of Torahtowne, a bungalow community of which he was a part owner in New York State. Falsely denying that he was involved in the fire, Davis filed an insurance claim with St. Paul and received a payment of $168,000 from the company. In 1982 Davis left the United States for Israel and did not return until his 1989 extradition to face criminal charges relating to the fire. Immediately after his criminal conviction, St. Paul filed suit against Davis to recover the money it paid to him as a result of the fire with interest.
 
 
 3
 Through his attorneys, Joshua Treem and Harry Levy, Davis moved to quash service of process and to dismiss the complaint, arguing: (1) that Davis is immune from civil process while in the United States pursuant to an order of extradition; (2) that the causes of action are barred under the statute of limitations; and (3) that a RICO claim against Davis should be dismissed for failing to show a pattern of racketeering activity. On April 5, 1991, the district court granted Davis's motion to dismiss the RICO claim, but denied his motion to quash service with regard to common law fraud and contract claims. On April 30, 1991, Plaintiffs moved for a default judgment, alleging that Davis had failed to file an answer in accordance with Fed. R. Civ. P. 12(a) within ten days of the April 5 order. Shortly thereafter, the district court granted a motion by Treem and Levy to withdraw as Davis's counsel, asserting that counsel had only agreed to represent Davis through the litigation of the motion to quash and dismiss.
 
 
 4
 On May 21, Davis was notified by the court clerk that his counsel had withdrawn and that his case would be "tried as a case conducted by you in proper person unless and until new counsel enters an appearance on your behalf." On July 11, the court entered a default judgment against Davis for $168,000 plus pre-judgment interest. Davis served a Motion for Reconsideration within ten days of entry of the default judgment, asserting: (1) that he had never seen a copy of the court's April 5th decision and did not have in his possession any of the pleadings in the case, including the complaint; (2) that he had recently sent the court motions for appointment of counsel and a request for copies of documents relevant to the case, but that these apparently had not reached the court before entry of judgment against him; and (3) that he is innocent of charges that he participated in a scheme to defraud the insurance company. Noting that Davis was represented by counsel when St. Paul's Motion for Default Judgment was filed, and that his assertion that he is innocent of the charges provides no basis for reconsideration, the court denied Davis's motion.[1]
 
 
 5
 This Court normally reviews default judgments, and denials of relief from default judgments, under an abuse of discretion standard. See United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). However, if a court fails to establish personal jurisdiction over a defendant, any default judgment would be void. See 10 Charles A. Wright et al., Federal Practice and Procedure § 2695 (1983). The question of personal jurisdiction in this case is purely legal. Therefore, to the extent that Davis challenges the default judgment on the basis of lack of personal jurisdiction, it is subject to de novo review. All doubts regarding the factual basis for the default are to be resolved in Davis's favor. See Tolson v. Hodge, 411 F.2d 123, 130 (4th Cir. 1969).
 
 
 6
 Under the law in this Circuit, default judgments are disfavored, and district courts should liberally grant relief from them where a defaulting party acts with reasonable diligence to set aside the default and tenders a meritorious defense to the plaintiff's complaint. See Moradi, 673 F.2d at 727. Additionally, this Court has considered whether the defaulting party has provided an appropriate excuse or explanation for the default. Id. at 728; Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc., 687 F.2d 182, 185 (7th Cir. 1982); 10 Charles A. Wright et al., Federal Practice and Procedure §§ 2692-2693. Although Davis meets all the other requirements for relief,[2] his contention that he is innocent of fraud is not a meritorious defense, given his criminal conviction for fraud. If we considered this claim of innocence Davis's only defense, the district court's failure to vacate the default judgment would not be an abuse of discretion. See Moradi, 673 F.2d at 727.
 
 
 7
 Treem and Levy's failure to send Davis the documents that would allow him to prosecute his own case effectively deprived Davis of the ability to assert a meritorious defense in his own behalf in the district court. However, it is apparent from Davis's informal brief that he had possession of the necessary documents when he filed his informal brief in this Court. Although justice demands some leniency in evaluating Davis's actions while forces beyond his control prevented him from mounting a defense, Id. at 728, there would be no excuse for his failure to affirmatively assert any defense he has in this Court. Beyond his non-meritorious allegation of innocence, the only defenses asserted in Davis's brief challenge the jurisdiction of the district court. Yet if Davis's jurisdictional challenge is meritorious, it would invalidate the default judgment, and no other reason to vacate the default would need to be shown. See Gray v. Permanent Mission of the People's Republic of the Congo to the United Nations, 443 F. Supp. 816, 821-22 (S.D.N.Y.), aff'd, 580 F.2d 1044 (2d Cir. 1978); 10 Charles A. Wright et al., Federal Practice and Procedure § 2697. Thus, this case turns exclusively on the issue of jurisdiction.
 
 
 8
 Davis maintains that he is immune from civil process while in the United States under an order of extradition. He asserts that under the "doctrine of specialty," his transfer to the United States:
 
 
 9
 is for a limited and defined purpose [and] it is impossible to conceive of the exercise of jurisdiction in such a case for any other purpose than that mentioned in the treaty, and ascertained by the proceedings under which the party is extradited, without an implication of fraud upon the rights of the party extradited, and of bad faith to the country which permitted his extradition.
 
 
 10
 United States v. Rauscher, 119 U.S. 407, 422 (1886).
 
 
 11
 Notwithstanding the potentially broad sweep of the language in Rauscher, we hold that the doctrine of specialty does not always bar civil process against a criminal defendant following extradition from another nation. The immunity protecting parties, witnesses, and attorneys from service who enter a state from another jurisdiction in order to attend court is designed primarily to avoid discouraging the voluntary attendance of these parties. See Lamb v. Schmitt, 285 U.S. 222, 225 (1932); Stewart v. Ramsay, 242 U.S. 128, 130 (1916); 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1076. This purpose is not promoted when attendance is involuntary. As a result, commentators have expressed doubts as to whether the doctrine of specialty should uniformly apply when a criminal defendant is involuntarily brought into a jurisdiction to face prosecution. See 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1081, and citations therein.
 
 
 12
 In Van Cauwenberghe v. Biard, 486 U.S. 517 (1988) the Supreme Court declined to rule whether the doctrine of specialty applied in a similar context. Id. at 525. Nevertheless, the Court discusses the most relevant consideration: how application of the doctrine bears on the treaty obligations of the United States. Id. at 525-26. The terms of the extradition treaty between the United States and Israel prohibits only criminal prosecution for offenses other than those for which extradition has been granted. See Convention on Extradition Between the Government of the United States of America and the Government of the State of Israel, Dec. 10, 1962, U.S.-Isr., art. XIII, 14 U.S.T. 1707, 1712. Subjecting Davis to civil liability does not violate any obligation of the United States to Israel. Cf. United States v. AlvarezMachain, 60 U.S.L.W. 4523, 4525-27 (U.S. 1992) (absent language in extradition treaty prohibiting forcible abduction by United States for the purpose of criminal prosecution, courts have jurisdiction to try individual abducted from another country). Under these circumstances, there is no reason for the doctrine of specialty to apply.
 
 
 13
 We deny Davis's motion for appointment of counsel and affirm the decision of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 The district court, having received the documents referenced in Davis's Motion for Reconsideration, denied Davis's motions for appointment of counsel, and forwarded a copy of Davis's request for documents to his former counsel
 
 
 [2]
 Davis has met his burden to prove diligence and excuse. Given that Davis immediately moved to set aside the default upon notice of entry of the judgment, which apparently was the first notice to Davis that he was in jeopardy of default, it is clear that he acted with reasonable diligence to set aside the default. Cf. Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc., 856 F.2d 873, 880 (7th Cir. 1988)
 Moreover, as an incarcerated pro se defendant, Davis could not reasonably have been expected to respond to St. Paul's complaint or its motion for a default judgment without access to these and other relevant pleadings or notification of the district court's April 5th decision. Treem and Levy should have known that their failure to provide Davis with copies of the pleadings, and appropriate information about the status of his case, probably would result in a default judgment against their former client. In petitioning for appointment of counsel and requesting copies of the pleadings, Davis was responding reasonably to the court's notice to him, which contained no indication of the imminent possibility of default. Davis appears personally blameless for the default, and should not be disadvantaged by the neglect of his former attorneys. See Moradi, 673 F.2d at 728; Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 374 (D.C. Cir. 1980) (default judgment vacated due to lack of wilfulness by uncounselled defendant in failing to timely file answer to complaint); 10 Charles A. Wright et al., Federal Practice and Procedure § 2695 (both lack of actual notice of suit and confusion resulting from the withdrawal of counsel may be cause to vacate a default judgment). But see Universal Film Exchs., Inc. v. Lust, 479 F.2d 573, 577 (4th Cir. 1973) (Each party is bound by acts of his lawyer. A client's remedy lies in a suit for malpractice.).